UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

THOMAS STALLWORTH and
WILLIE MAE STALLWORTH,

       Plaintiffs,

vs.

THE HARTFORD INSURANCE COMPANY,
a Delaware Corporation and SEAN MANLEY,
Individually and As agent for Hartford

       Defendant.

_____/

CASE NO: 3:06CV89MCR/EMT

## DEFENDANTS', THE HARTFORD INSURANCE COMPANY AND SEAN MANLEY'S, MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

The Defendants, THE HARTFORD INSURANCE COMPANY ("The Hartford") and SEAN MANLEY ("Manley"), hereby move, pursuant to Fed. R. Civ. P. 12 (b)(6), Fed. R. Civ. Pro. 12 (b)(1) and N. D. Fla. Loc. R. 7.1 to dismiss the Complaint of THOMAS STALLWORTH and WILLIE MAE STALLWORTH ("Stallworths") and in support thereof state as follows:

### FACTUAL OVERVIEW

The Stallworths have filed a three count Complaint seeking recovery for breach of contract, breach of the warranty of good faith and fair dealing and unfair claim settlement practices. These claims involve a policy of automobile insurance issued to them by The Hartford in 1997 (See Complaint, paragraph 6). A copy of the insurance policy was not attached by the Stallworths to their pleading. The Stallworths assert that they were involved in an automobile

accident in May 1999. (See Complaint, paragraph 7) As a result of this accident the Stallworths believe that they are entitled to payments under the subject policy, although the exact type of relief sought in their Complaint is not entirely clear. In one paragraph, the Complaint speaks of a failure to pay "medical benefits." (See Complaint, paragraph 9) In another paragraph reference is made to painful and disabling bodily injuries. (See Complaint, paragraph 7) In yet another paragraph, reference is made to Florida's personal injury protection statute. (See Complaint, paragraph 17) The exact nature of the insurance benefits sought by the Stallworths is not further explained in their pleading. As a result, one reading the Complaint is left to guess whether this is a claim for personal injury protection benefits ("PIP"), medical payment benefits ("Med Pay") or uninsured motorist benefits ("UM"). Further, as to Mr. and Mrs. Stallworth, there is no differentiation between their claims. If this is intended as a bodily injury claim, one has no way, from a review of the Complaint, to determine if it was Mr. Stallworth, Mrs. Stallworth or both who were injured. Further, to the extent the Complaint seeks payment for medical bills, it does not specify when, where or on whose behalf these bills were incurred. If this claim represents, as it seems to appear, a claim for uninsured motorist benefits, there has been no allegation that the adverse driver was either uninsured or underinsured, or that the Stallworths' claims exceed the amount of the bodily injury coverage available to the tortfeasor(s).

      Both The Hartford and its claim adjuster, Manley, have been individually named in this Complaint. The Stallworths allege that this Court has diversity jurisdiction pursuant to 28 U.S.C. §1332 and supplemental jurisdiction pursuant to 28 U.S.C. §1367. (See Complaint, paragraph 1)

## FAILURE TO PROPERLY ALLEGE SUBJECT MATTER JURISDICTION

It is well settled that any grant of diversity jurisdiction pursuant to 28 U.S.C., §1332 must be strictly construed. *Morrison v. Allstate Indemnity Co.*, 228 F. 3d 1255 (11th Cir. 2000), *Romanella v. Hayward*, 114 F.3d 15 (2d Cir. 1997) and 1 Fed. Pro. L. Ed. § 1:45 ("28 U.S.C.A., §1332 must be construed strictly, literally and narrowly.")  For diversity jurisdiction to exist the facts sustaining it must appear affirmatively and clearly on the face of the complaint. *Massey v. Congress Life Insurance Company*, 116 F.3d 1414 (11th Cir. 1997)  *Equitable Life Assurance Society of the United States v. Alexander Grant & Co.*, 627 F. Supp. 1023, 1025 (S.D.N.Y. 1985) ("It is fundamental that a complaint must affirmatively allege subject matter jurisdiction and that absent a properly pleaded basis for federal jurisdiction the complaint must be dismissed.")

In the case of a corporate defendant, a properly pleaded assertion of diversity jurisdiction requires an affirmative statement as to both its state of incorporation as well as principal place of business.  See *Taylor v. Appleton,* 30 F. 3d 1365 (11th Cir. 1994); *Camper & Nicholsons Intern Ltd. v. Blonder Marine & Charter, Inc.,* 793 F. Supp. 318 (S.D. Fla. 1992).  In the instant case, the Complaint fails to allege either the state of incorporation or the principal place of business of The Hartford.  Instead, the Stallworths only generally assert that The Hartford is a "Delaware corporation doing business in the State of Florida." (See Complaint, paragraph 3)  Respectfully, this generalized assertion does not satisfy either of the mandatory pleading requirements necessary for a proper assertion of diversity jurisdiction over a corporate defendant.  The inadequacy of this type of non-specific allegation of diversity jurisdiction is specifically addressed in the treatise, <u>Federal Procedure, Lawyers Edition</u>, wherein the author's note:

> In a properly pleaded diversity action involving a corporate party, the plaintiff must not only allege that there is diversity of citizenship, but must also advert to the factors  set out by 28 U.S.C.A., Section 1332 (c)(1).  That is, the plaintiff must aver to

> the state or states of incorporation and the principal place of business of the corporate party. An allegation, for example, that a corporation is "an Illinois corporation" is erroneous because it is impossible to tell whether the corporation is incorporated in the state or is both incorporated and has its principal place of business there. Also, because a corporation has only one principal place of business, alleging the state where "a" place of business of a corporation is located is an insufficient allegation of the state where "its principal place of business" is located.

1 Fed. Proc. L. Ed., § 1:323 (2006). In the instant case, the subject Complaint runs afoul of these twin admonitions as it fails to allege either The Hartford's principal place of business or its state of incorporation. This deficiency precludes an assertion of diversity jurisdiction. See *Joiner v. Diamond M. Drilling Co.*, 677 F.2d 1035, 1039 (5th Cir. 1982). ("In order to adequately establish diversity jurisdiction, a complaint must set forth with specificity a corporate party's state of incorporation and its principal place of business. Where the plaintiff fails to state the place of incorporation or the principal place of business, the pleadings are inadequate to establish diversity.")

The allegations of diversity jurisdiction as to Defendant Manley are also deficient. It is axiomatic that citizenship determines the existence of diversity jurisdiction as to an individual defendant. See *Taylor*, 30 F.3d at 1367 ("Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person.") and *Massey v. Health First Inc.*, 2005 W.L. 1668544 (M.D. Fla. 2005) In the instant Complaint, the only jurisdictional allegations as to Manley is that he is a Florida resident and that he is employed in The Hartford's Tampa office. (See Complaint, paragraph 4) The Complaint does not allege or even mention Manley's state of citizenship nor does it make reference to his domicile.[1] This deficiency precludes an assertion of diversity jurisdiction as this Court is left to guess as to Manley's

---

[1] Interestingly, the Stallworths do specifically refer to their own <u>domicile</u> as being in Houston, Texas. (See Complaint, paragraph 2) However, as to Manley the only made reference is to his residency. (See Complaint, paragraph 4)

4

citizenship and as to whether there exists complete diversity between the parties. See *Wooland v. Heyer Schulte*, 791 F.Supp. 294, 295 (S.D. Fla. 1992) ("For diversity purposes, allegations of an individual's 'residency' do not establish his 'citizenship'.") and *Guaranty National Title Company, Inc. v. J.E.G. Associates,* 101 F.3d 57, 59 (7th Cir. 1996) ("When the parties allege residence but not citizenship, the court must dismiss the suit.")

The Complaint is also inadequate in terms of its diversity allegations as it does not even attempt to assert the monetary amount in controversy. 28 U.S.C. §1332 (2) only authorizes an exercise of diversity jurisdiction when the amount in controversy is in excess of $75,000. As noted by the Eleventh Circuit Court of Appeals:

> Federal courts are courts of limited jurisdiction. In order to invoke a federal court's diversity jurisdiction, a plaintiff <u>must claim</u>, among other things, that the amount in controversy exceeds $75,000. (Citations omitted. Emphasis supplied)

*Federated Mutual Insurance Company v. McKinnon Motors LLC*, 329 F.3d 805, 807 (11th Cir. 2003). In this case, the complaint is silent as to the amount in controversy and does not even attempt to assert that the unspecified claimed damages are in excess of this Court's jurisdictional threshold. See *ILC Corp. v. Latino Newspaper, Inc.*, 747 F. Supp. 85, 87 ( D.D.C. 1990) ("To determine whether a case satisfies the amount in controversy requirement and whether to exercise diversity jurisdiction, courts examine the complaint, which is defective unless it contains a proper allegation as to the amount in controversy.") In this case, the Court can glean from the Complaint that this is likely some type of personal injury claim, but beyond that it is provided with no further indication as to the amount in controversy.

Respectfully, the instant Complaint fails in several distinct respects to properly assert a claim within this Court's diversity jurisdiction. Initially, there is no allegation as to The Hartford's principal place of business or its state of incorporation. As to Manley, the Complaint

5

improperly addresses residency while failing to mention his domicile or citizenship. Finally, there is no attempt to even generally assert that the amount in controversy exceeds the required threshold of $75,000. Since there are no federal claims presented, the failure to properly allege an alternative basis for subject matter jurisdiction requires a dismissal of this action.[2]

### COUNT II FOR BREACH OF WARRANTY OF GOOD FAITH AND FAIR DEALING FAILS TO STATE A CAUSE OF ACTION

**A.      Premature Bad Faith Claim**

The claim set forth in Count II styled "Breach of the Warranty of Good Faith and Fair Dealing" is a premature and impermissible attempt to assert a first party claim for statutory bad faith. See Fla. Stat. §624.155. Under Florida law, no action for the bad faith handling of a claim can exist until the underlying coverage dispute has been resolved. *OneBeacon Insurance Company v. Delta Fire Sprinklers Ind.,* 898 So.2d 113, 115 (Fla. 5th DCA 2005) ("OneBeacon correctly argues that the trial court's order, allowing Delta Fire to assert a bad faith claim against it, was improper before the coverage issue had been resolved.") and *Hartford Insurance Company v. Mainstream Construction Group*, 864 So.2d 1270, 1272 (Fla. 5th DCA 2004) ("As interpretated by the Florida Supreme Court, "an insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith in settlement negotiations can accrue.") Any attempt to assert a statutory bad faith claim at this juncture would be improper and premature because there has been no determination that any benefits or coverage are due under the subject policy.

---

[2] The Stallworths' reference to 28 U.S.C. § 1391 as a basis for this Court's jurisdiction appears misplaced. (See Complaint, paragraph 1)  §1391 only provides supplemental jurisdiction over certain claims where original jurisdiction otherwise exists.  It does not, however, provide an independent basis for jurisdiction in the first instance. See *Fitch v. Scott*, 2006 W.L. 485139 (M.D. Fla. 2006) ("A federal court only has supplemental jurisdiction when it first has original jurisdiction.")

6

Since a bad faith claim itself is premature at this juncture, it would likewise be impermissible to allow the Stallworths to proceed forward with a substantially similar claim under a different name. Under Florida law, no cause of action exists for the bad faith refusal to pay a first party claim except pursuant to Fla.Stat. §624.155. In other words, such a claim exists under the applicable statute or not at all. See *Talat Enterprises Inc. v. Aetna Casualty and Surety Co.,* 753 So.2d 1278 (Fla. 2000) ("Although the Florida common law recognized third-party bad faith claims, it did not recognize claims made by an insured against its own insurer for failing to act in good faith when settling a claim.") and *Dennis v. Northwestern Mutual Life Insurance Company*, 2006 W.L. 1000308 (M.D. Fla. 2006). As a result, a plaintiff cannot simply disguise a statutory bad faith claim by changing its style or heading and thus avoid the prohibition against filing such actions prior to a determination of coverage and damages. In the instant case, although plaintiff uses the nomenclature "breach of the warranty of good faith and fair dealing," it is clear that what is being asserted is a claim for the alleged bad faith refusal to pay first party insurance benefits. This is illustrated by comparing the allegations of Count II with the language of Florida's Bad Faith Statute:

|    | **PARAGRAPH** | **COMPLAINT** | **FLA.STAT. 624.155- which prohibits the following conduct** |
|----|---------------|---------------|----------------|
| 1. | Paragraph 10 | "Further, the Hartford has failed to acknowledge with reasonable promptness pertinent communications from plaintiffs with respect to plaintiff's claims." | Failing to acknowledge and act promptly upon communications with respect to claims. |
| 2. | Paragraph 10 | "Additionally, Hartford has not attempted in good faith to effectuate a prompt, fair and equitable settlement of plaintiff's | Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it |

7

|    |              |                                                                                                                                                                                                                                                                     |                                                                                                                                                                                                                                                                 |
|----|--------------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|    |              | claim submitted in a situation where Hartford's liability has become reasonably clear."                                                                                                                                                                             | acted fairly and honestly towards its insured and with due regard for her or his interests. (Fla.Stat. 624.155(1)(b)(1).                                                                                                                                        |
| 3. | Paragraph 11 | "Further, The Hartford has failed to provide in a timely manner any reasonable explanation of the basis in the policy of insurance for the denial of plaintiff's claim: or for the failure to offer to plaintiffs any compromise settlement."                       | Failing to provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement. (Fla. State. 624.155(1)(a)(1) which incorporates Fla. Stat. 626.9541(1)(i)(f). |
| 4. | Paragraph 12 | "These deliberate, knowing and willful actions on the part of Defendant, Hartford Insurance Company represents an ongoing and continuous pattern of fraud and bad faith business practices…"                                                                         | No statutory comparison is offered as the Stallworths candidly refer to Hartford's alleged actions as "bad faith".                                                                                                                                              |

As this comparison illustrates, regardless of what heading is attached to Count II, it is in actuality a claim for statutory bad faith which is premature and unauthorized prior to a determination of coverage and damages in the instant action.

A similar situation was recently addressed in *Dennis v. Northwestern Mutual Life Insurance Company*, 2006 W.L. 1000308 (M.D. Fla. 2006), concerning, in part, an attempt to assert allegations of bad faith within a claim for breach of an insurance policy. The court concluded that any references to bad faith were premature and would unfairly interject such issues into the underlying coverage case. *Dennis*, *id* at 1000311 ("Consequently, pleading allegations or conducting discovery on the issue of improper claim handling is not allowed under

8

Florida law unless plaintiff first determines coverage exists. Therefore, Plaintiffs' bad faith allegations are prejudicial to Defendant.") The court correctly determined that the carrier would be adversely and unfairly impacted by allowing a jury to consider issues involving bad faith and unfair claims handling in conjunction with the breach of contract action. Under such circumstances the *Dennis* court found that it was appropriate to strike from the Plaintiff's contract claim all allegations or references to bad faith.

**B.    Elements of Action Not Asserted**

While Florida does recognize an implied covenant of good faith and fair dealing in contractual relationships, a breach of this covenant is separate and distinct from an action for bad faith. Such a claim has its own individual elements and pleading requirements. The Stallworths have not attempted to satisfy any of these elements in the paragraphs set forth or incorporated into Count II of the Complaint. As a result, even if they contend, as is anticipated, that they are not attempting to plead a statutory bad faith action, they have simply failed to assert the facts and elements necessary to support a claim for breach of the implied covenant of good faith and fair dealing[3].

In Florida, an action for breach of a contract's implied covenant of good faith and fair dealing is a limited remedy. See *Burger King Corp. v. Weaver*, 169 F.3d 1310 (11th Cir. 1999) ("…the rights conferred by the implied covenant of good and fair dealing are limited.") It does not standing alone constitute a separate or independent cause of action. See *Burger King*, 169 F.3d at 317. ("We hold that no independent cause of action exists under Florida law for breach of the implied covenant of good faith and fair dealing.") and Dennis, 2006 W.L. 1000312, ("The parties agree that Florida law prohibits Plaintiff from asserting a separate claim for breach of the

---

[3] The Stallworths refer to a "breach of the warranty of good faith and fair dealing" in Count II. The courts of Florida, however, characterize this claim as a "breach of the implied covenant of good faith and fair dealing." For uniformity of reference, Defendants will utilize the "implied covenant" language.

covenant of good faith and fair dealing.") Rather, such a cause of action can only be maintained where the claimant can point to an express provision of the contract which has been breached. *Centurion Air Cargo, Inc. v. United Parcel Service Co.*, 420 F.3d 1146 (11th Cir. 2005). In this regard, the remedy has been referred to as a "gap-filler" which can be utilized by a court to address conduct not otherwise referenced in the parties' contract. See *Shibata v. Lim,* 133 F.Supp. 2d 1311 (M.D. Fla. 2000) It is generally applied where conduct is not defined by the contract or where one party has the ability to act with unrestrained discretion. *Publix Super Markets Inc. v. Wilder Corporation of Delaware*, 876 So.2d 652 (Fla. 2nd DCA 2004) In effect, the covenant limits the ability of one party to unfairly effect the benefits available to another under the contract. *Burger King Corporation v. Weaver,* 169 F.3d 1310 (11th Cir. 1999). However, as aforesaid it is only applicable where the complaining party can identify an express provision of the contract which has been violated. *Maxwell v. First United Bank,* 782 So.2d 931 (Fla. 4th DCA 2001) ("However, where not related to the performance of an express term of the contract, such an action cannot be maintained.") Thus, in *Dennis*, the court dismissed a claim for breach of the implied covenant of good faith and fair dealing where the plaintiff was unable to identify a specific provision of the insurance policy which had been breached. *Dennis*, 2006 W.L. at 1000313 ("Notably, plaintiff does not point to any provision that defendant breached.") Likewise, the Stallworths in their complaint have failed to allege the breach of an express provision of the contract. Instead, they affirmatively contend that Count II is based upon "representations made by Hartford at the time in which the parties entered into the contract for insurance.") (See Complaint, paragraph 17). Such an oral representation can never serve as the basis for a breach of implied covenant claim, as the doctrine simply has no applicability outside the four corners of the involved contract. *Burger King,* 169 F.3d at 1316.

Even if this Court assumes that the Stallworths can identify a specific provision of the policy which has been breached, a claim for violation of the good faith covenant must be based upon factors separate and apart from the breach of contract itself. To the extent that such a claim relies upon the same facts alleged in support of the breach of contract action, it is redundant and properly dismissible.

> However, a breach of the implied duty may be dismissed as redundant where the conduct allegedly violating the implied covenant is duplicative of the companion cause of action alleging breach of contract. Thus, a party can maintain a claim for breach of the implied duty only if it is based on allegations different from those underlying the accompanying breach of contract claim. If the allegations simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated (citations omitted)

*Shibata,* 133 F.Supp. 2d at 1319.

The Stallworths thinly veiled attempt to assert a premature bad faith claim is deficient even if it is analyzed solely as a claim for breach of implied warranty of good faith and fair dealing. The complaint does not allege, assert or refer to any specific or express term of the contract which was violated by the defendants. In fact, it asserts nothing more than a generalized dispute over the value of the Stallworths' claim. Further, the facts supporting the breach of contract action are identical to those asserted in the breach of implied covenant claim. In fact, both counts incorporate by reference the very same factual allegations contained within the complaint. As such, the implied covenant claim is, at best, a redundancy which offers to the Stallworths no additional avenue of relief. *Shibata,* 133 F.Supp. 2d 1311. Finally, the Stallworths point to no conduct left unaddressed in the subject insurance policy which would support an invocation of this remedy. In fact, the Stallworths affirmatively contend that it is the contract itself which requires a payment of their claim.

### COUNT III
### UNFAIR CLAIM SETTLEMENT PRACTICES

In Count III, the Stallworths attempt to set forth a cause of action for "unfair claim settlement practices." To do so, they incorporate the very same allegations which provide the basis for both of their breach of contract and breach of implied covenant claims. In their contract claim set forth in Count I, the Stallworths allege that the defendants acted willfully and wantonly in refusing to provide benefits under the policy. (See Complaint, paragraph 14) In Count III, for unfair claims settlement practices, the very same facts are alleged although, this time, it is asserted that the refusal to pay constituted an "unconscionable course of conduct." (See Complaint, paragraph 19) In short, the claims are the same, only the adjectives used to describe the allegedly wrongful conduct are different.

No claim exists at common law for unfair settlement practices in the processing or payment of a first party insurance claim. As a result, if the Stallworths intended a common law claim predicated upon unfair settlement practices, they have failed to assert a cause of action. See *Allstate Indemnity v. Ruiz,* 899 So.2d 1121 (Fla. 2005) ("Traditionally and historically, the courts in this state did not, however, recognize a corresponding common law first party action that would protect insured individuals or enable them to seek redress of harm against their insurers for the wrongful processing or denial of their own first-party claims or failure to deal fairly in claims processing.") Although unpled by the Stallworths, a Florida statute actually does exist which prohibits, *inter alia*, certain "unfair claim settlement practices." See Fla.Stat. 626.9541(1)(i). However, as is true with Florida Statute 624.155, any action in Florida to redress alleged unfair claim settlement practices is not authorized until there has been a determination as to coverage and damages. See *Hartford v. Mainstream Construction Group,* 864 So.2d 1270

(Fla.Stat DCA 2004) and *Lane v. Provident Life & Accident Insurance Company*, 71 F.Supp. 2d 1255 (S.D. Fla. 1999). In *Mainstream Construction Group,* the court explained the rationale in precluding a claim for unfair settlement practices until after a resolution of the involved contractual issue:

> We observe in this connection that the rationale undergirding the rule requiring a determination of coverage and contractual issues before a claim for bad faith may be prosecuted is essentially the same as for a claim for unfair settlement practices. If there is no insurance coverage nor any loss or injury for which the insurer is contractually obligated to indemnify, the insurer cannot have acted in bad faith in refusing to settle the claim. Similarly, if there is no coverage, then the insured would suffer no damages resulting from its insurer's unfair settlement practices. (citations omitted)

*Mainstream Construction Group, 864 So.2d at 1272*. At this juncture, the issues of coverage, liability and damages remain unresolved. Until a determination in this regard, Count III for unfair claims settlement practices is unauthorized, premature and properly dismissible.[4] As required by Florida law this Court should mandate, that if jurisdiction otherwise exists, that the Plaintiffs proceed forward to try and establish their breach of contract claim. If successful, at that point they can pursue whatever additional remedies they believe they are entitled to. However, it is mandatory that the successful prosecution of the contract claim come first.

### **DEFENDANT MANLEY IS NOT INDIVIDUALLY LIABLE AND SHOULD BE DISMISSED**

---

[4] The Hartford acknowledges that if jurisdiction otherwise exists, that the Stallworths should be able to plead a claim for breach of contract, arising from the alleged failure to pay benefits due under the policy. However, should this Court permit an amendment of these pleadings it is respectfully submitted that the Stallworths be required to re-state their contract claim with additional specificity. Fed. R. Civ. Pro. 12 (c). At a minimum, they should be required to provide a short plain statement of the claim, i.e. "This is an action for uninsured motorist benefits for bodily injury and medical expenses sustained by Thomas Stallworth." As it is presently pled these Defendants are left guessing as to the exact nature of the claim and on whose behalf it has been submitted. If they were struck by an uninsured motorist, this should be averred. If they intend a claim for person injury protection benefits this should also be set forth. In short, the defendants should not be left guessing as to claims being asserted against them.

The Complaint alleges affirmatively that Manley was employed as a claims adjuster with The Hartford (See Complaint, paragraph 4). There is nothing within the Complaint alleging that Manley took any actions except in his capacity as an employee of The Hartford. Further, although the Complaint uses descriptive buzz words such as "fraud", "bad faith", and "intentional", the Complaint does nothing more than allege that Manley, in his capacity as an employee of The Hartford, declined to pay an insurance claim submitted by the Stallworths. In short, once the claim is stripped of its hyperbolic rhetoric it presents as nothing more than garden variety insurance dispute over the value of a submitted claim. As a mere adjuster involved in a contractual decision by his employer, Manley incurs no personal liability to a disgruntled policyholder.[5]

Counts I and II of the instant Complaint both assert contractual claims for relief. Count I is for a pure breach of contract with Count II being for breach of an implied covenant, which is also sub-species of contract law. See *Shibata*, 133 F.Supp.2d at 1318 ("It is an interpreting, gap-filling tool of contract law.") In the instant case, there is no allegation that Manley issued, signed or personally obligated himself on the subject policy of insurance. Clearly, Manley as an employee of The Hartford incurs no personal liability simply because he is employed by an entity that issued a policy of insurance. See *Pelican Automotive, Inc. v. Rutigliano*, 729 So. 2d 488 (Fla. 2nd OCA 1999) (owner and employee not responsible for contracts of corporation), *Tipton v. Nationwide Mutual Fire Insurance Company*, 381 F. Supp. 2d 567, 571 (S. D. Miss. 2003) (applying Mississippi law) ("In addition, any individual, including an agent may not be held directly liable under an insurance contract if that person was not a party to the insurance contract itself because that person has no duty arising from the policy to provide coverage.") and

---

[5] This rule, particularly as to insurance company employees, makes logical sense. Claims decisions, by their nature, can lead to dissatisfaction and disagreement. Individuals would be reluctant to accept employment with insurers if they were to incur liability personally every time a policyholder disagrees with a policy interpretation.

*Hudock v. Donagal Mutual Insurance Company,* 264 A.2d 668 (Pa. 1970) (applying Pennsylvania law) ("The basic defect in these allegations, as noted by the court below, is the failure to establish a contractual relationship between the adjusters and the insured appellants. Without such a relationship, it is impossible for the adjusters to be liable for breach of contract to the insureds.") Since Manley did not issue the subject policy of insurance any liability as to him cannot be predicated upon a breach of contract or any cause of action arising from the contract.

Assuming, without deciding, that an adjuster could be responsible under Florida law for an independent tort committed in his representative capacity, that issue is not currently before the Court.[6]  The only non-contractual claim asserted is a generalized count for "unfair claims settlement practices." (Count III) As set forth *supra*, such an action is premature and cannot be maintained until the underlying coverage dispute has been resolved. See *Lane v. Provident Life and Accident Insurance Company*, 71 F.Supp. 2d 1255 (S.D. Fla. 1999). As a result, the Complaint fails to set forth a valid claim of individual liability as to Manley.

## CONCLUSION

Based upon the foregoing, The Hartford and Manley respectfully request this Court to dismiss this action for lack of subject matter jurisdiction and/or to dismiss the enumerated claims for failure to set forth claims upon which relief can be granted.

---

[6] At least as to negligence actions, it appears doubtful that a claim of personal liability against an adjuster can set forth a cause of action. *King v. National Security Fire and Casualty Company*, 656 So.2d 1338 (Fla. 4th DCA 1995) (noting that Florida does not recognize a cause of action by an insured against an independent adjuster sounding in simple negligence.)

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 27, 2006, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: Thomas Stallworth and Willie Mae Stallworth, P.O. Box 941148, Houston, TX 77094.

HINSHAW & CULBERTSON LLP

**s/Joseph T. Kissane**
Joseph T. Kissane
Florida Bar No.: 512966
50 North Laura Street
Suite 4100
Jacksonville, FL 32202
Telephone: 904-359-9620
Facsimile: 904-359-9640
jkissane@hinshawlaw.com
Attorneys for Defendants

22171650v1 865080