## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

THOMAS STALLWORTH And
WILLIE MAE STALLWORTH,

                                    CASE NO.: 3:06-CV-0089MCREMT

                Plaintiffs

Vs.

HARTFORD INSURANCE COMPANY
And HARTFORD INSURANCE COMPANY
OF THE MIDWEST,

                Defendants
_____\

## PLAINTIFFS' OPPOSITION TO MOTION FOR
## PARTIAL SUMMARY JUDGMENT

      **COME NOW PLAINTIFFS Thomas Stallworth and Willie Mae Stallworth** who file

this opposition to Defendants' Motion for Partial Summary Judgment; and in support of said

opposition, would show the court as follows:

### Factual Background

      This is an insurance coverage dispute arising out of a covered automobile accident which

occurred in Escambia County, Florida in May of 1999. Thomas Stallworth and his wife, both

insured and plaintiffs herein, were driving in their automobile when struck from behind by

another driver. At the time, the Stallworths were driving under a personal auto insurance policy

provided by defendant Hartford Insurance Company through its subsidiary company Hartford

Insurance Company of the Midwest (hereinafter "Hartford"). Stallworth and his wife both

received injuries in the accident. The Stallworths brought suit against the offending driver and

wrote to Hartford informing them of the lawsuit and seeking the insuror's intervention in the

litigation. The Stallworths eventually recovered an amount for damages in that suit. The amount recovered was less than the estimated past and future medical costs and other damages incurred by the Stallworths.

During the pendency of the auto crash lawsuit, Hartford notified the Stallworths that it, Hartford, was declining its right of subrogation and its right to intervene in the suit; and that the Stallworths were free to pursue their best outcome in the litigation. After receiving a settlement amount in the case, the Stallworths wrote to Hartford demanding payment for damages amounts not covered by the settlement in the underlying case. Hartford refused to pay any amounts to the Stallworths; and continues until the present to deny coverage on the Stallworths' claim.

## II. Legal Context and Posture of the Case

Hartford's current motion for partial summary judgment concerns the Stallworth claim and count (Count II of the Second Amended Complaint) for breach of the covenant of good faith and fair dealing. In sum, Hartford argues that the breach of good faith claim is redundant – that it is a mere restatement of the breach of contract claim; and that Plaintiffs had identified no separate contractual provision upon which such a claim could be supported. The motion for partial summary judgment compels Plaintiffs to identify a specific textual provision of the insurance contract the violation of which supports the claim for breach of the duty of good faith and fair dealing. Plaintiffs' Opposition to the Motion for Partial Summary Judgment is submitted in strict compliance with the court's order and advisory dated July 5, 2007.

## III. The Pertinent Policy Provisions

The pertinent textual provision of the insurance policy is found at PART C – SECTION 1 UNINSURED MOTORISTS COVERAGE – STACKED at pages 20 and 21 of the policy. The

2

text of the Hartford policy is attached as Exhibit B to Defendants' Motion for Partial Summary

Judgment, and is incorporated into Plaintiffs' Opposition by reference. The insuring agreement

of the policy states as follows:

A.    *We will pay compensatory damages which an insured is legally entitled to*
      *recover from the owner or operator of an uninsured motor vehicle because of*
      *bodily injury:*
      *1.Sustained by an insured; and*
      *2.Caused by an accident.*
      *The owner's or operator's liability for these damages must arise out of the    ownership,*
      *maintenance or use of the uninsured motor vehicle. Any judgment for damages arising*
      *out of a suit brought without our written consent is not binding on us.*

Item C of this section goes on to explain the term uninsured motor vehicle:

C.    *"Uninsured motor vehicle" means a land motor vehicle or trailer of any type:*
      *1. To which no bodily injury liability bond or policy applies at the time of the accident .*
      *2. To which a bodily injury liability bond or policy applies at the time of the accident*
      *but the amount paid for bodily injury under that bond or policy to an insured is not*
      *enough to pay the full amount the insured is legally entitled to recover as damages.*
      (Emphasis added).

The Section goes on to outline pertinent exclusions:

*EXCLUSIONS*

A.    *We do not provide Uninsured Motorists Coverage for bodily injury sustained by any*
      *person:*
      *1. If that insured or the legal representative settles the bodily injury claim without our*
      *consent. However, this exclusion (A.1.) does not apply:*
      *a. If such settlement does not prejudice our right to recover payment; or*
      *b. To a settlement made with the insurer of a vehicle described in Section 2. of the*
      *definition of uninsured motor vehicle.*

      (Hartford Personal Auto Insurance Policy Florida attached as Exhibit 'B' to

      Defendants' Motion for Partial Summary Judgment and incorporated herein by
      reference for all purposes).

      In December 2005 Hartford – aware of the ongoing litigation between Stallworth and the

offending driver – notified Stallworth that Hartford was waiving its rights to subrogation in the

3

lawsuit; and that Stallworth could "accept the bodily injury liability limits of [tortfeasor's insurance policy]." Hartford letter attached as Exhibit 'A' to this Opposition.

The policy limit of coverage implicated in the underlying tort case was fifty thousand ($50,000) dollars. Stallworth and the policyholder settled the case for that amount. Hartford chose not to participate in the litigation of Stallworth's claim; and chose not to participate in the settlement discussions with the policyholder and his insurer. Hartford cannot now claim that the settlement amount was inadequate; *see* Galen Health Care, Inc. v. American Casualty Co. of Reading, Pa., 913 F. Supp. 1525 (M.D. Fla. 1996)(holding that an insurer who fails to defend cannot complain about reasonableness of settlement); or that Hartford had no knowledge of the amount under discussion. *See*, Kopelowitz v. Home Ins. *Co.*, 977 F. Supp.1179 (S.D. Fla. 1997)(declaring that a failure to defend estops insurer from relitigating issues of law and fact necessarily determined in prior case).

## IV. The Gist of Plaintiffs' Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

When Hartford made the business decision to take no part in the conduct or settlement of Stallworths' claim against the offending driver, the decision left Hartford financially vulnerable to only one contingency: that the amount of the settlement would not be enough to cover all of the Stallworths' claim for injury and damages. The possibility of this contingency was certainly weighed by Hartford; but the determination was made that such occurrence was not likely. The USAA policy limits – limits which were, in fact, known to Hartford – should have been in the ordinary case adequate to cover the Stallworth claim. In this instance, the USAA policy limits were not adequate. And therein lies the dilemma for Hartford: whether to exercise discretion in order to promote Hartford's interests; or respect the plain meaning of the UIM clause and honor the insured's reasonable expectations for payment. The amount for injury and present and future

medical costs, as well as lost wages now being claimed by the Stallworths – amounts to which they were '*legally entitled to recover as damages*' in the underlying suit – are now the exclusive obligation of Hartford. And Hartford refuses to pay.

## V. The Legal Argument

The basic notion underlying the implied covenant of good faith and fair dealing is that one party cannot capriciously exercise discretion accorded it under a contract so as to thwart the contracting parties' reasonable expectations. *See,* Sepe v. City of Safety Harbor, 761 So. 2d 1182, 1185 (Fla. 2d DCA 2000)(holding that, even where one party has "sole discretion" under a contract, that party, in exercising its discretion, must act in good-faith and in accordance with the contracting parties' expectations); Cox v. CSX Intermodal, Inc.,732 So. 2d 1092, 1097-98 (Fla. 1st DCA 1999)(stating that, "where the terms of a contract afford a party substantial discretion ..., the duty to act in good faith ... limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party"). This abusive exercise of discretion is a cause of action separate and distinct from the basic breach of the above-referenced contractual clause. To establish a breach of the implied covenant of good faith and fair dealing, the Stallworths:

"[M]ust demonstrate a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence; but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." Shibata v. Lin, 133 F.Supp.2d 1311, 1319 (M.D. Fla. 2000)

In the instant case, the Stallworths reasonably expected that any damages amount proved but not recovered in the underlying tort suit would be recovered under their policy with Hartford. That is the clear and unambiguous import and promise of Part C, Section 1 of the Hartford policy regarding coverage for claims caused by uninsured / underinsured motorists. This expectation of

5

full payment for damages formed the basis for the Stallworths' decision to accept the settlement offered by USAA for the original car crash defendant: and is in fact, the *raison d'etre* for the policy itself. The thrust of the implied covenant of good faith and fair dealing is that there arise instances in the contractual relationship where the insurer must subordinate its interests to the interests of the insured. The Hartford policy is rife with instances where all discretion is vested in the insurer. The "*Exclusions*" section excerpted above is but one example where Hartford may choose to act or not act depending upon however its interests are best served.

The Stallworths' claim is not simply that 'Hartford has refused to pay me;' *see* Stallworth Deposition at 173-75 (Defendants' Exhibit 'B' to Motion for Partial Summary Judgment) ; plaintiffs' claim is that by disturbing the settled expectation that losses and damages in excess of the settlement amount could and would be recovered through the UIM portion of the policy, Hartford has breached the near fiduciary-like relationship between insurer and insured.

## a. Treatment of the Implied Covenant In Florida Law

Cases addressing Florida law on the implied covenant of good faith and fair dealing all analyze the alleged breach in terms of the frustration of the central purpose of the contract. *See, e.g.,* Ernie Haire Ford, Inc. v. Ford Motor Co., 260 F.3d 1285, 1292 (11th Cir. 2001)(identifying the selling of cars – not the relocation of dealerships – as the central purpose of the contract ); Mount Sinai Medical Center v. Heidrich & Struggles, 329 F. Supp. 2d 1309, 1313 (S.D. Fla. 2004)(finding defendant's assistance in identifying, selecting and presenting candidates to be the central purpose of the contract); Shibata v. Lin, 133 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000)(explaining that breach of implied covenant is demonstrated where one party's act unfairly frustrates the "agreed common purpose" of the parties). "Just what conduct will meet this criteria must be determined on a case by case basis and will depend on the contractual purposes and

6

reasonably justified expectations of the parties." *Id.* In this instant case, the central purpose of the insurance policy was to provide liability coverage; and to pay for damages suffered by the insured but not recovered from the uninsured/underinsured motorist. This reasonable expectation on the part of the Stallworths should be fulfilled

## Prayer

WHEREFORE plaintiffs pray that the court deny the motion for partial summary judgment; sustain Count II of Plaintiffs' Amended Complaint by finding a sufficient basis for plaintiffs' claim for breach of the duty of good faith and fair dealing; and grant to plaintiffs any and all such other and further relief to which at law or in equity they may show themselves justly entitled.

Respectfully submitted

Thomas Stallworth

Willie Mae Stallworth

## Certificate of Service

I hereby certify that a true and correct copy of the above and foregoing Opposition to Motion for Partial Summary Judgment was mailed to Joseph T. Kissane, 1805 Copeland Street, Jacksonville, Florida 32204 by depositing same, postpaid, with the United States Postal Service at Houston, Texas on this 3rd day of August, 2007.

Thomas Stallworth

7

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

THOMAS STALLWORTH And
WILLIE MAE STALLWORTH,

CASE NO.: 3:06-CV-0089MCREMT

Plaintiffs

Vs.

HARTFORD INSURANCE COMPANY
And HARTFORD INSURANCE COMPANY
OF THE MIDWEST,

Defendants

_____\



State of Texas     §
County of Harris §

## AFFIDAVIT OF THOMAS STALLWORTH

**BEFORE ME THE UNDERSIGNED** Notary Public appeared Thomas Stallworth, a person known to me, who after being by me duly sworn did depose on his oath and state as follows:

1. My name is Thomas Stallworth. I am over the age of eighteen (18) years and competent

   to make this affidavit of fact based upon my personal knowledge.

2. I am a plaintiff in the above-styled and captioned cause; as is my wife Willie Mae

   Stallworth.

3. The copy of the Hartford Personal Auto Insurance Policy Florida attached to Defendants'

   Motion for Partial Summary Judgment as Exhibit 'B'(hereinafter 'Policy') is a copy of

   the insurance policy which was submitted to me by a representative of the Hartford

   Insurance Company of the Midwest. It is my understanding that Hartford Insurance

   Company of the Midwest is an affiliated company of the Hartford Insurance Company.

   Both companies are defendants in this lawsuit.

4. I agreed to the terms and provision s of the Policy; and commenced payments of premiums due on the policy. At the time of the automobile accident involving my automobile and the automobile of another which accident occurred in May of 1999, the Policy was in full force and effect.

5. With respect to certain provisions of the Policy, I believed that Part C Section I of the Policy occurring at page 20 of the Policy (and similarly Part C Section II occurring at page 23 of the Policy), provided coverage to me for the monetary recovery of damages amounts which were legally due to me but were otherwise not collectible from any offending third-party automobile driver or his insurer.

6. I made and gave to the Hartford all appropriate and required notices concerning both the accident and the subsequent lawsuit filed by me against the offending driver. Hartford declined to participate in the lawsuit and negotiations. A copy of a Hartford letter to me advising of Hartford's decision is attached to this affidavit as Exhibit "A". After a period of negotiation, I achieved and agreed to a settlement and compromise of my claimed injuries and damages against the driver of the automobile who caused the May, 1999 accident. The total amount of damages compensation received by me and my wife in settlement was Fifty Thousand ($50,000) Dollars.

7. The actual value and costs of the damages, injuries, and other losses which we incurred was significantly in excess of the amount received in the settlement.

8. It was always my expectation and belief, based on my understanding of the terms, conditions and provisions of the Policy, that Hartford would pay, and that Hartford was obligated to pay, all of the damages and injury amounts proven by me in excess of the settlement amount recovered.

9. Further, it was and is my belief that my expectation of payment from Hartford in the circumstances described herein was reasonable and consistent with the plain meaning of the relevant terms and conditions identified and referenced in the Policy.

Further Affiant Sayeth Not.

Thomas Stallworth

SUBSCRIBED AND SWORN TO Before Me the Undersigned Authority; to certify which witness my hand and official seal on August 4, 2007.

FAIRIE HEATH
NOTARY PUBLIC
State of Texas
Comm. Exp. 02-01-2010

Fairie Heath
Notary Public in and for the State of Texas

My Commission Expires: 02/01/2010



THE
HARTFORD

December 05, 2005

Thomas & Willie Mae Stallworth
PO Box 941148
Houston, TX 77094

Re:   Insured:         Thomas & Willie Mae Stallworth:
      Date of Loss:    05/04/1999
      Claim Number:    PA0004809634

Dear Mr. & Mrs. Stallworth:

This will acknowledge our telephone conversation of 12/5/2005 with Mr. Stallworth.

We understand that you have tentative agreed to settle your injury claims at the 12/2/2005 mediation with the other driver's auto carrier, USAA, for its policy limits of $25,000 for each of you. Provide us with a copy of the mediation form and advise us if you will be filing a petition to dismiss the summons against the Defendants.

This will confirm that you would like to pursue an Underinsured Motorist Bodily Injury claim to The Hartford. We have not received a request by USAA for us to waive any subrogation for any Underinsured Motorist Bodily Injury exposure to us.

As discussed, we do not have your medical records so that we can evaluate the injury claims for you and your wife, Willie Mae Stallworth, therefore, we have enclosed Medical Authorization forms for both of you to sign and return to us so that we can pursue the medical records for review.

Considering you have had prior auto accidents on or about September 27, 1997 and February 22, 1999, we would need a copy of all of the medical records since both of those accidents. Provide us with the specific information and dates with the circumstances of all other accidents or injuries prior to 5/4/1999 and after 5/4/1999. It is important that you provide us with the name, address and phone number of all of your medical providers prior to the 5/4/1999 accident and after this date for both of you.

It is important that you know that your medical condition prior to this accident including any medical problems is imperative for both of us to properly evaluate the causal relationship of your injuries to this 5/4/1999 accident, therefore, any and all medical information is needed for to understand the causation and medical prognosis of your injuries.

You advised that you became disabled for over a year as a result of the 5/4/1999 accident. Enclosed is a Wage Authorization form for your signatures and a Wage Statement form for the employer's completion so that we can pursue this information.

Mr. Stallworth, as discussed, we must have supporting evidence to validate the causality of an injury claim submitted and its causal relationship to the said accident including a person's medical condition at the time of such accident, therefore, it is important that you assist us in the investigation for the validation of your injury claims.

Handling ID:Return to Requestor
Blank Memo To Insured
S2M

**Exhibit "A"**

The Hartford Insurance Company
Southeast Personal Lines
Claim Service Center
P.O. Box 30773
Tampa, FL 33630-3773
Telephone 813 286 8243
Toll Free 800 637 5410



We have enclosed an addressed envelope for your convenience.

Please feel free to call us if you have any questions.

Sincerely,

Nathl F Math

Nathaniel F. Mathews
Claims Supervisor
1-800-637-5410 extension 65894

Handling ID:Return to Requestor
Blank Memo To Insured
S2M

The Hartford Insurance Company 2
Southeast Personal Lines
Claim Service Center
P.O. Box 30773
Tampa, Fl. 33630-3773
Telephone 813 286 8243
Toll Free 800 637 5410